IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KHEM PHONGSUWAN,

        Plaintiff,                No. CIV S-08-2193 GGH

    vs.

MICHAEL J. ASTRUE,          ORDER
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II, respectively, of the Social Security Act ("Act"). For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born February 3, 1959, applied on September 13, 2005 for disability benefits. (Tr. at 372, 99.) Plaintiff alleged she was unable to work due to depression, diabetes, asthma, back pain, pain and numbness in the hands, foot pain, sleep disturbance, and isolation.

(Tr. at 13.)

In a decision dated January 24, 2008, ALJ Mark C. Ramsey determined plaintiff was not disabled.  The ALJ made the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009 (Exhibit B-8D).
>
> 2. The claimant has not engaged in substantial gainful activity since December 23, 2004, the alleged onset date ( 20 CFR 404.1520(b), 404.1571 *et seq*, 416.920(b) and 416.971 *et seq*.)  (Exhibit B-7D).
>
> 3. The claimant has the following severe impairments: Depression and Post-traumatic Stress Disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
>  Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>  Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>  Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>  Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>  Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1   listed impairments in 20 CFR Part 404, Subpart P,
    Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
2   416.920(d), 416.925 and 416.926).

3   5.   After careful consideration of the entire record, the
         undersigned finds that the claimant has the residual
4        functional capacity to perform a full range of work at all
         exertional levels but with the following nonexertional
5        limitations: she is limited to performing simple unskilled
         work activity.  Unskilled work involves little or no
6        judgment to do simple duties that can be learned on the job
         in a short period of time.  Unskilled work would thus
7        accommodate the claimant's mental limitation.

8   6.   The claimant is capable of performing her past relevant
         work as a packer or worker in a dry cleaning establishment.
9        This work does not require the performance of work-related
         activities precluded by the claimant's mental residual
10       functional capacity (20 CFR 404.1565 and 416.965).

11  (Tr. at 13-19.)

12  ISSUES PRESENTED

13          Plaintiff has raised the following issues: A.  Whether the ALJ Rejected the

14  Opinions of the Treating and Examining Physicians Without a Legitimate Basis; and B. Whether

15  the ALJ Erred in Finding Plaintiff Capable of Past Relevant Work and Stopping the Sequential

16  Evaluation.

17  LEGAL STANDARDS

18          The court reviews the Commissioner's decision to determine whether (1) it is

19  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

20  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

21  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

22  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

23  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

24  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ

25  is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

26  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

3

1  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

2  rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

3  ANALYSIS

4      A.  Whether the ALJ Failed to Consider the Opinions of the Treating and Examining

5  Physicians

6          Plaintiff contends that the ALJ mischaracterized and rejected the opinions of

7  treating psychiatrist, Dr. Nguyen, and examining psychologist Dr. Stephenson.

8          The weight given to medical opinions depends in part on whether they are

9  proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

10  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily,

11  more weight is given to the opinion of a treating professional, who has a greater opportunity to

12  know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

13  Cir. 1996).

14          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

15  considering its source, the court considers whether (1) contradictory opinions are in the record;

16  and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a

17  treating or examining medical professional only for *"clear and convincing"* reasons.  Lester , 81

18  F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be

19  rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

20  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

21  examining professional's opinion (supported by different independent clinical findings), the ALJ

22

23      [2]  The regulations differentiate between opinions from "acceptable medical sources" and
24  "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
    psychologists are considered "acceptable medical sources," and social workers are considered
    "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
25  when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
    regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
26  accordingly are given less weight than opinions from "acceptable medical sources."

4

1  may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

2  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

3  weigh the contradicted treating physician opinion, <u>Edlund v. Massanari</u>, 253 F.3d 1152 (9th Cir.

4  2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and

5  supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999)

6  (treating physician's conclusory, minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>,

7  881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

8  insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

9          In this case, the ALJ first stated that he was giving substantial weight to the

10  testifying medical expert, Dr. Walter.  (Tr. at 17.)  Later in his opinion, he stated that Dr. Walter

11  summarized the consulting psychologist opinion of Dr. Stephenson, who had diagnosed

12  depressive disorder, NOS.  (<u>Id.</u> at 20, 324.)  The ALJ then summarized Dr. Stephenson's records,

13  noting that plaintiff could perform her daily activities, despite her depression.  She did have

14  difficulty with concentration and attention, however, as well as a moderate degree of severity.

15  The ALJ summarized Dr. Stephenson's findings that plaintiff's main problem at work would be

16  cultural differences but that her depression and PTSD were not severe.[4]  (<u>Id.</u> at 20.)  The ALJ

17  also noted that "Dr. Walter testified that none of the remaining mental treatment records show a

18  severe or significant impairment."  (<u>Id.</u>)  Nevertheless, later in the opinion, the ALJ noted that on

19  cross-examination, Dr. Walter testified that he did not agree with the severity of the assessment

20  by plaintiff's treating physician, Dr. Nguyen, in regard to her mental condition.  (<u>Id.</u> at 21.)  The

21  ALJ described Dr. Walter's testimony:

22  \\\\\

---

23

24      [3]  The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

25

26      [4]  Although Dr. Stephenson did make these findings, his report did not specifically describe plaintiff's condition as moderately severe in any respect.  (Tr. at 319-25.)

5

> In most of [Dr. Nguyen's treating physician notes], she only had mild to moderate problems at most.  In the last report from Northgate Point, she was accorded a GAF of 50 with a major depressive disorder.  He again noted that a GAF of 50 indicates suicidal ideation, and such that he testified to earlier.  Dr. Walter stated that he believed her GAF was about 55 with a moderate degree of impairment.  He based this on her presentation during the hearing and the other medical records he reviewed.  His opinion would not change if her presentation during the hearing was excluded, because most of the exhibits aside from the last one by Northgate Point indicate a lesser degree of impairment.  The other exhibits included the PFRTs and MRFCs completed by Dr. Bible and by Dr. Richards, and the psychiatric report by Dr. Stephenson.

(Id. at 21.)

Plaintiff's main argument about these findings is that the ALJ credited a physician who had never examined plaintiff, and one who was either confused about the other mental health treatment records, or misconstrued them.  Plaintiff further objects to Dr. Walter's opinion because he had not reviewed any treatment records from the Del Paso Clinic as they were not submitted until after the hearing.

In regard to plaintiff's first argument, the opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when supported by other substantial evidence in the record.  See Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  "It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989), citing Russell v. Bowen, 856 F.2d 81, 83 (9th Cir.1988) (citation omitted).

Within the parameters set forth above, the ALJ is free to rely on whatever evidence he chooses, even though reliance on other evidence would have caused him to reach the opposite conclusion.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  Furthermore, an ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts. See, e.g., Magallanes, 881 F.2d at 753 (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence).  However, such selective reliance must be

1  consistent with the medical record as a whole.  <u>See</u>, e.g., <u>Edlund v. Massanari</u>, 253 F.3d 1152,

2  1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable).

3        Here, it was proper for the ALJ to place substantial weight on Dr. Walter's

4  opinion.  Furthermore, it should be noted that plaintiff was represented by counsel at the hearing

5  who had the opportunity to cross-examine this testifying psychologist, who had had the

6  opportunity to assess plaintiff's testimony at the hearing.  Moreover, as will be set forth in this

7  discussion, Dr. Walter's opinion is supported by other substantial evidence in the record.

8        Second, in regard to Dr. Stephenson, the ALJ did not reject this consulting

9  psychiatrist.  Plaintiff contends rather that Dr. Walter, on reviewing Dr. Stephenson's opinion,

10  was confused.  For example, plaintiff claims that Dr. Walter misconstrued statements by Dr.

11  Stephenson.  Dr. Walter summarized Dr. Stephenson's opinion: "She had difficulty with

12  concentration and attention.  And he felt that she had a moderate degree of severity.  Her major

13  problem, at that time, he felt was cultural interferences with her work effort.  But nothing that

14  would be a severe degree of impairment."  (<u>Id.</u> at 62.)

15        Plaintiff claims that Dr. Stephenson actually found not that her culture would

16  interfere with her ability to work, but rather that plaintiff's attention and memory problems

17  would interfere with her ability to work.  Plaintiff is partially correct.  Dr. Stephenson did state

18  that plaintiff's culture might interfere with her obtaining psychiatric intervention.  He thought

19  that such treatment would benefit her.  (<u>Id.</u> at 324.)  What is more important than the

20  aforementioned misinterpretation of a fairly insignificant  statement, as the records prove that

21  plaintiff's culture did not interfere with her ability to obtain psychiatric treatment, is the fact that

22  nowhere did Dr. Stephenson mention work at all.   Nor did he place any functional limitations on

23  plaintiff's capabilities.  Both plaintiff and Dr. Walter are incorrect in this respect.  What Dr.

24  Stephenson stated was that plaintiff "had difficulty focusing attention."  She failed various tests

25  of concentration.  She was diagnosed with depressive disorder, NOS, and PTSD was not ruled

26  \\\\\

2:08-cv-02193-GGH   Document 30   Filed 03/05/10   Page 8 of 14

1   out.  Her GAF was 55.[5]  Plaintiff's prognosis was guarded; however, she would benefit from

2   psychiatric intervention.  (Id. at 324.)

3            Plaintiff's later psychiatric treatment records point out that plaintiff did in fact

4   benefit from psychiatric treatment, as mentioned *infra*, and overcame whatever cultural barriers

5   which might have prevented her from doing so.  (Id. at 195, 191.)  Additionally, both plaintiff

6   and Dr. Walter are incorrect in characterizing Dr. Stephenson's opinion as finding plaintiff's

7   condition severe in any respect.  Dr. Stephenson made no reference to a degree of severity.  (Id.

8   at 323-24.)

9            Contrary to plaintiff 's contention that Dr. Walter failed to emphasize Dr.

10  Stephenson's finding that plaintiff's problem of attention and concentration would interfere with

11  her ability to perform tasks, this medical expert specifically stated that "concentration was a

12  problem," and "she had difficulty with concentration and attention."  (Id. at 62.)

13           Plaintiff also claims that her impairment is much more severe than characterized

14  by Dr. Walter, as reflected by her GAF score and past suicide attempt.  Plaintiff reported to Dr.

15  Stephenson that she had thoughts of suicide but had no plan.  (Id. at 320.)  She reported to Dr.

16  Nguyen that she attempted suicide by taking some pills, but her daughter stopped her.  (Id. at

17  259.)  Therefore, plaintiff argues, Dr. Walter's opinion that the record supported only a GAF

18  score of 55 was inaccurate as a GAF of 50 includes suicide attempts as an example.  A particular

19  GAF score is only of limited assistance, however.

20               As a global reference intended to aid in treatment, 'a GAF score
                 does not itself necessarily reveal a particular type of limitation and
21               is not an assessment of a claimant's ability to work.' Stokes v.
                 Astrue, No. 8:08-cv-1657-T23HTS, 2009 WL 2216785, at *7
22               (M.D.Fla. July 23, 2009) (citations omitted). Indeed, 'GAF scores
                 are of very limited usefulness due to their failure to translate into
23

24       [5]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a
     hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
25   Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 51-60 indicates
     moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or
26   moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

                                                  8

1           concrete functional limitations.' Id.; see Revised Medical Criteria
       for Evaluating Mental Disorders and Traumatic Brain Injury, 65
2           Fed.Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale ...
       does not have a direct correlation to the severity requirements in
3           our mental disorders listings.").

4    Hernandez v. Astrue, 2010 WL 234954 (D. Ariz. 2010). A GAF score is merely a snapshot in

5    time. Mann v. Astrue, 2009 WL 2246350 (C.D. Cal. 2009). "While a GAF score may be of

6    considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."

7    Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002).

8           As GAF scores do not an assess a plaintiff's ability to work, the scores do not

9    serve to contradict Dr. Walter's assessment, which directly addresses this question. Furthermore,

10   there is no evidence that plaintiff's GAF score was 50 for a continuous twelve month period. In

11   fact, in August of 2007, plaintiff's depression was reported to be much improved. (Tr. at 191.)

12          The DDS examiner, Dr. Richard, also concluded that plaintiff's functioning was

13   not as severe as plaintiff alleges, but was consistent with the assessments of Drs. Walter and

14   Stephenson. Plaintiff was found to be only mildly limited in restriction of daily activities and in

15   maintaining concentration, persistence and pace. She was moderately limited in maintaining

16   social functioning. (Id. at 313.)

17          Another state agency examiner, Dr. Bible, found plaintiff to be moderately limited

18   in the following categories only: understanding, remembering, and carrying out detailed

19   instructions, maintaining attention and concentration for extended periods, completing a normal

20   workday and workweek and working at a consistence pace, interacting appropriately with the

21   general public, and responding appropriately to changes in the work setting. Plaintiff was found

22   to be not significantly limited in all other areas.   (Id. at 264-65.)

23          Plaintiff attempts to place emphasis on Dr. Nguyen's opinions as plaintiff's

24   treating psychiatrist; however, as defendant aptly points out, plaintiff saw this practitioner only

25   twice. (Tr. at 257-61.)

26   \\\\\

1    It is true that Dr. Walter did not have the Del Paso Clinic records at his disposal

2 because they were submitted later; however, they indicate improvement in plaintiff's condition.

3 Although noting that plaintiff's depression was not well controlled as of July 12, 2007, later

4 notes indicate that as of August 30, 2007, plaintiff's depression had improved on Lexapro; she

5 was sleeping better; and she appeared stable. (Tr. at 195, 191).  The ALJ took note of this

6 improvement.  (Id. at 15.)   A condition which can be controlled or corrected by medication is not

7 disabling.  See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's

8 Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440

9 (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling).  Furthermore,

10 the fact that these most recent mental health records show improvement indicates that plaintiff's

11 earlier condition was not permanent.

12    Plaintiff asserts that Dr. Walter's opinion cannot constitute substantial evidence

13 because he relies on the same findings of Drs. Nguyen and Stephenson, but comes to a different

14 conclusion, which is not permitted under Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007).  Plaintiff

15 specifically argues that Dr. Walter's medical conclusions regarding plaintiff's functional

16 limitations differ from these other examining practitioners.  Drs. Nguyen and Stephenson did not

17 assess any functional limitations, however.  The GAF score by Dr. Nguyen, as pointed out supra,

18 is of limited value.  The concentration limitation noted by Dr. Stephenson does not differ in

19 degree from Dr. Walter's limitation.  Dr. Walter was the only practitioner to assign a degree of

20 limitation in regard to concentration and attention, that it was moderate.  (Id. at 63.)  Dr.

21 Stephenson had stated only that plaintiff had difficulty in "focusing attention," and noted that she

22 failed various tests.  (Id. at 324.)  He did not assign a degree of limitation to this aspect of

23 plaintiff's functional ability.

24    Finally, plaintiff's credibility is also at issue, and for this additional reason, the

25 ALJ appropriately rejected portions of the mental health opinions.  "An ALJ may reject a treating

26 physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been

10

1   properly discounted as incredible." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9ᵗʰ Cir. 2008),

2   <i>citing</i> <u>Morgan v. Comm'r Soc. Sec. Admin.</u>, 169 F.3d 595, 602 (9ᵗʰ Cir. 1999) (<i>citing</i> <u>Fair V.</u>

3   <u>Bowen</u>, 885 F.2d 597, 605 (9ᵗʰ Cir. 1989)).  Furthermore, "the ALJ is the final arbiter with

4   respect to resolving ambiguities in the medical evidence."  <u>Id.</u>

> Historically, the courts have recognized conflicting medical
> evidence, the absence of regular medical treatment during the
> alleged period of disability, and the lack of medical support for a
> doctor's report based substantially on a claimant's subjective
> complaints as specific, legitimate reasons for disregarding the
> treating physician's opinion. <u>Flaten</u>, 44 F.3d at 1463-64; <u>Fair v.</u>
> <u>Bowen</u>, 885 F.2d 597, 604 (9th Cir.1989). The ALJ is not required
> to accept the opinion of a treating or examining physician if that
> opinion is brief, conclusory and inadequately supported by clinical
> findings. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir.2002).

11  <u>Morehead v. Astrue</u>, 2008 WL 3891464, *5 (E.D. Wash. 2008).

12          Here, it is reasonable to assume that Dr. Nguyen's and Dr. Stephenson's records

13  were based on plaintiff's subjective complaints.  The ALJ separately analyzed plaintiff's

14  credibility and found that she was not entirely credible.  (<u>Id.</u> at 18.)  Plaintiff does not challenge

15  this finding.

16          That court finds that substantial evidence supports the ALJ's reliance on Dr.

17  Walter's opinion rather than Dr. Nguyen's opinion.  The court also finds that the ALJ did not

18  reject Dr. Stephenson's opinion.

19      B. <u>Whether the ALJ Erred in Finding Plaintiff Capable of Past Relevant Work and</u>

20  <u>Stopping the Sequential Evaluation</u>

21          Plaintiff next argues that the ALJ erred in finding plaintiff had the residual

22  functional capacity to perform her past relevant work based on her mental limitations which

23  require a vocational expert.

24          At step four, the plaintiff has the burden of showing that he is no longer able to

25  perform his past relevant work.  <u>Lewis v. Barnhart</u>, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing

26  <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001)).  Plaintiff cannot merely show he is

1  incapable of performing the particular job he once did; he must prove he cannot return to the

2  same type of work.   Villa v. Heckler, 797 F.2d 794, 798 (9th Cir.1986).  The ALJ's

3  determination at this step must be based on an examination of plaintiff's "residual functional

4  capacity and the physical and mental demands" of the past relevant work.  Id.  (quoting 20 C.F.R.

5  §§ 404.1520(e) and 416.920(e)).  "A claimant must be able to perform her past relevant work

6  either as actually performed or as generally performed in the national economy."  Id.  "The

7  Social Security Regulations provide that the ALJ may draw on two sources of information to

8  define the claimant's past relevant work as actually performed: (1) the claimant's own testimony,

9  and (2) a properly completed vocational report."  Id.

10         Here, the ALJ determined that plaintiff retained the residual functional capacity

11  ("RFC") to perform her past work "as a packer or worker in a dry cleaning establishment," based

12  on his finding that she could do work at all exertional levels but with certain limitations: "she is

13  limited to performing simple unskilled work activity.  Unskilled work involves little or no

14  judgement to do simple duties that can be learned on the job in a short period of time.  Unskilled

15  work would thus accommodate the claimant's mental limitation."  (Tr. at 19, 17.)  Plaintiff's past

16  jobs are considered medium work, and require a level 2 reasoning ability.  DICOT 920.587-018

17  (packager); 363.682-018 (presser).   Both jobs define reasoning level of 2 as "apply

18  commonsense understanding to carry out detailed but uninvolved written or oral instructions.

19  Deal with problems involving a few concrete variables in or from standardized situations."  (Id.)

20         Plaintiff contends that plaintiff cannot do these past jobs because they require a

21  level 2 reasoning ability which is beyond the capability of someone who is limited to simple

22  unskilled work, and based on plaintiff's non-exertional limitations in maintaining concentration,

23  persistence or pace, as well as memory problems.

24         Here, the limitation to "simple unskilled work" must be reconciled with the

25  reasoning level 2 of plaintiff's past work.  Rather than adhere to a strict construction of what this

26  limitation equates to in terms of reasoning level, this court prefers to follow the well developed

12

reasoning of the Central District in Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal.

2005).  There, the plaintiff was found to be limited to "simple tasks performed at a routine or

repetitive pace."  Id. at 982.  The court explained that although the Social Security Regulations

contained only two categories of abilities in regard to understanding and remembering

instructions, either "short and simple" and "detailed" or "complex,' the DOT had many more

gradations for measuring this ability, and there were six gradations altogether.  Id. at 984.  For

example, level 2 requires application of "commonsense understanding to carry out detailed but

uninvolved written or oral instructions.  Deal with problems involving a few concrete variables

in or from standardized situations."  DICOT, App. C.  The court continued:

> To equate the Social Security regulations use of the term "simple"
> with its use in the DOT would necessarily mean that all jobs with a
> reasoning level of two or higher are encapsulated within the
> regulations' use of the word "detail."  Such a "blunderbuss"
> approach is not in keeping with the finely calibrated nature in
> which the DOT measures a job's simplicity.

Meissl, 403 F. Supp.2d at 984.

Furthermore, the use of the term "uninvolved" qualifies and limits the term

"detailed" in the DOT, and refutes any attempt to equate the Social Security regulations' use of

the term "detailed" with the DOT's use of that term.  Id.  The court found that the plaintiff's RFC

must be compared with the DOT's reasoning scale.  A reasoning level of two would encompass

an RFC of being able to do "simple and routine work tasks."  Id.  Level 2 is one step above level

1 which is defined as slightly less than simple tasks that are in some sense repetitive.  For

example, they include the job of counting cows as they come off a truck.  Id.

The reasoning level of plaintiff's past work is not in conflict with the limitation to

simple unskilled work as described by the ALJ in reliance on Dr. Walter's testimony and the

assessments of the state agency doctors.  Therefore, it was not necessary for the Commissioner to

call a vocational expert because the production burden never shifted to the Commissioner.  See

Miller v. Heckler, 770 F.2d 845, 850 (9th Cir.1985).  The ALJ may consider the testimony of a

1  vocational expert to determine if plaintiff can do his past relevant work, see Pinto v. Massanari,

2  249 F.3d 840, 847 (9th Cir. 2001); however, the ALJ is not required to call such an expert at the

3  fourth step.  See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).

4        The ALJ properly found plaintiff capable of performing her past relevant work.

5  CONCLUSION

6        There is no doubt that plaintiff has suffered difficult experiences which the vast

7  majority of persons in the United States have had the good fortune to avoid, and to further

8  complicate life, plaintiff has had to cope with getting along in a culture foreign to the one in

9  which she was born.  However, disability benefits must be reserved for those with present

10  inabilities to work because of the disability; the record here simply does not support such a

11  finding.

12        Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is

13  denied, the Commissioner's Cross Motion for Summary Judgment is granted, and judgment is

14  entered for the Commissioner.

15  DATED: 03/05/2010      /s/ Gregory G. Hollows

16        GREGORY G. HOLLOWS
      U.S. MAGISTRATE JUDGE

17  GGH/076
18  Phongsuwan2193.ss.wpd